IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| MABELYN RAYFORD<br>7626 Bridgetown Rd.<br>Cincinnati, OH 45248<br><br>        Plaintiff,<br><br>        v.<br><br>SISTERS OF CHARITY OF CINCINNATI,<br>OHIO<br>5900 Delhi Rd.<br>Mt. St. Joseph, OH 45051<br><br>    **Serve Also:**<br>    SISTERS OF CHARITY OF<br>    CINCINNATI, OHIO<br>    c/o Teres Dutcher, SC (Stat. Agent)<br>    5900 Delhi Road<br>    Mount St. Joseph, OH 45051<br><br>        Defendant. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Mabelyn Rayford, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Rayford is a resident of the city of Minster, Auglaize County, Ohio.

2. Defendant SISTERS OF CHARITY OF CINCINNATI, OHIO ("Sisters") is a domestic non-profit that conducts business within the state of Ohio.

3. The relevant location of the events and omissions of this Complaint took place was 5900 Delhi Rd., Mt. St. Joseph, OH 45051.

4. Sisters is, and was at all times hereinafter mentioned, Rayford's employer within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S. Code § 634, the

Americans with Disability Act ("ADA") 42 U.S.C. § 12101, R.C. § 4101 et seq., and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Rayford filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00570 ("EEOC Charge").

6. On or about August 1, 2022, the EEOC issued and mailed the Notice of Right to Sue letter to Rayford regarding the EEOC Charge.

7. Rayford received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

8. Rayford has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Rayford has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

14. Rayford is a former employee of Sisters.

15. At all times noted herein, Rayford was qualified for her position(s) at Sisters.

16. At all times noted herein, Rayford could fully perform the essential functions of her job(s), with or without a reasonable accommodation.

17. Rayford worked for Sisters as a Cashier from July 2021 and as a Store Manager from March 2022, until Sisters unlawfully terminated Rayford's employment on or about May 6, 2022.

18. Rayford is age 61 and thus is in a protected class for her age. All other people mentioned herein are substantially younger than Rayford, upon information and belief.

19. Rayford is disabled due to her arthritis and anemia and thus is in a protected class for disability.

20. Defendant had notice of Rayford's protected classes during her employment.

21. Rayford worked for Sisters, ending as a Charge Nurse/Licensed Practical Nurse ("LPN"), from on or about October 9, 2017, until Sisters terminated her employment on or about January 13, 2022.

22. Rayford was hired after an interview with Theresa Cave (HR assistant) and Ron Swish (Director of HR).

23. Rayford's early employment was overall positive. She was consistently rated as a good performer and had no attendance issues.

24. On or about March 27, 2018, Rayford received her first write-up from Sisters citing that she had failed to provide a specific medication to a patient.

25. Rayford was the third nurse to see the patient after two shifts prior to hers.

26. Two other nurses on separate shifts (who are outside Rayford's protected classes, upon information and belief) had also failed to provide the patient the medication.

27. Only Rayford was disciplined for this failure to provide medications; the other two nurses disparately were not.

28. After the write-up, Rayford complained of discriminatory discipline to Angela Anderson (Director of Nursing) regarding the write-up. This was a protected complaint.

29. Anderson did not respond to Rayford's protected complaint.

30. On or about July 18, 2018, Rayford's son had legal issues.

31. Rayford asked Anderson if she could leave early to help out her son.

32. Anderson denied Rayford's request to leave early to help her son.

33. Disparately, Anderson let several employees outside Rayford's protected classes come in late and leave early for their children's issues, legal or not.

34. After Anderson's denial, Rayford complained to Anderson that she felt this denial was discriminatory as others outside her protected classes were allowed to leave to help their children. This was another protected complaint, and again, Anderson did not respond.

35. On or about January 7, 2019, Rayford worked with a temp-agent nurse, Nakia Johnson (LPN).

36. Johnson slept through most of her shift at Sisters, and Rayford had to wake her up to complete her work multiple times.

37. Rayford, tired of having to wake Johnson up to do her job, complained to Roe Flowers (nightshift supervisor/LPN) and left a voicemail with Anderson.

38. The following Monday, Anderson and Flowers called Rayford into a meeting and moved her from the floor she had been working on. They cited that Rayford was unable to handle the work on that floor.

39. Rayford pushed back, citing that Johnson, who is outside Rayford's protected classes, was sleeping on the job and was not being reprimanded for sleeping or for incompletion of work. This was another protected complaint of discrimination.

40. Anderson ignored the response and continued with the discipline against Rayford.

41. Rayford then complained to Ron Swish (Director of HR), citing she was being treated differently than her colleagues – another protected complaint.

42. Swish ignored Rayford's protected complaint and continued to blame her for Johnson's failures.

43. On or about June 12, 2019, Rayford was disciplined for allowing a patient go to a different floor at Sisters.

44. This patient had asked Rayford to direct her to the chapel, which Rayford did. Patients were allowed to visit the chapel during their stays at Sisters.

45. Flowers then reprimanded Rayford for allowing the patient to go to the chapel.

46. Disparately, other LPNs outside Rayford's protected classes were not disciplined for allowing patients to travel within Sisters' campus.

47. Rayford again complained of this disparate treatment to HR, but again her protected complaint was ignored.

48. On or about January 14, 2020, Rayford picked up an evening shift on behalf of another LPN.

49. Rayford called Julie Stearns (nightshift supervisor) thrice to tell her that she would have to leave by 6 AM to help her son in the morning.

50. Stearns did not allow Rayford to leave at 6 AM, despite that other LPNs outside Rayford's protected classes were allowed to leave early to help their children.

51. On or about June 8, 2020, Rayford received an email from Anderson stating that a patient was wet and needed to be changed. The patient also had had pillows propped next to her to prevent her from rolling out of bed.

52. Rayford asked why Anderson was mentioning this to her as she had not worked the overnight shift and was not dealing with the patient.

5

53. Rayford pointed out that the nightshift nurses were the ones helping the patient, not her.

54. Anderson tried to discipline Rayford this as well, but Rayford contested the discipline as she was not working that night. Anderson did not try to give false discipline to LPNs outside Rayford's protected classes.

55. On or about December 1, 2020, Sandy Vulker (LPN, outside Rayford's protected classes) texted a particularly nasty message to Rayford because Rayford had to call off a specific shift.

56. Rayford reported this message to Gale Fites (assistant Director of Nursing), who told Rayford to simply, "get over it."

57. Fites then reported Rayford to Anderson for the complaint. Anderson then reprimanded Rayford for the complaint by disallowing her to request help from other LPNs.

58. Disparately, Anderson did not prevent other LPNs outside Rayford's protected class from asking for help.

59. On or about May 27, 2021, Fites wrote Rayford up for leaving a patient wet overnight.

60. Rayford, knowing that her pushback had no useful result previously, signed the write-up, but complained that the day shift nurses (also outside Rayford's protected classes) were not disciplined for the same conduct. This was another protected complaint that, again, went nowhere.

61. On or about July 12, 2021, the nurses on the shift before Rayford's had allowed a patient to lay in her soiled bed for several hours.

62. Rayford again was disciplined for this, despite that she was not the person who let the patient stay in the soiled bed. Again, her similarly-situated colleagues were not disciplined for this inaction.

63. On or about January 3, 2022, Rayford fell ill. She took a rapid COVID-19 test, which returned negative.

64. Rayford gave notice of the test and symptoms to Anderson, who told her to go for a PCR test the following Wednesday (around five days later). Anderson required Rayford to PCR-test negative before being allowed to return to work.

65. On or about January 4, 2022, Anderson texted Rayford asking why she was not at work that day.

66. Rayford responded that Anderson had specifically disallowed her to come into work before a PCR test was completed and returned negative the day before.

67. Anderson told Rayford to come in anyway, but Rayford refused as she was waiting on her PCR test and wanted not to potentially infect Sisters' patients and employees – this was a protected complaint regarding workplace safety and public policy.

68. On or about January 12, 2022, Sisters terminated Rayford's employment.

69. The above facts demonstrate that Defendant engaged in a pattern and practice of age and disability discrimination.

70. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

71. There was a causal connection between Rayford's disability and Defendant's termination of Rayford.

72. As a result of Sisters's acts and omissions, Rayford has suffered, and will continue to suffer, damages.

## COUNT I: AGE DISCRIMINATION UNDER THE ADEA

73. Rayford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

74. Throughout her employment, Rayford was fully competent to perform her essential job duties.

75. Defendant treated Rayford differently than other similarly situated employees based on her age.

76. Defendant violated the ADEA by discriminating against Rayford due to her age.

77. Sisters terminated Rayford without just cause.

78. Alternatively, Defendant's cited reason for terminating Rayford's employment was pretext.

79. At all times material herein, similarly-situated younger employees were not terminated without just cause.

80. Defendant terminated Rayford based on her age.

81. Defendant violated the ADEA when it terminated Rayford based on her age.

82. Rayford suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADEA.

83. As a direct and proximate result of Defendant's conduct, Rayford has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: AGE DISCRIMINATION UNDER R.C. § 4112 et seq.

84. Rayford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. Throughout her employment, Rayford was fully competent to perform her essential job duties.

86. Defendant treated Rayford differently than other similarly situated employees based on her age.

87. Defendant violated R.C. § 4112.02(A) et seq. by discriminating against Rayford due to her age.

88. Sisters terminated Rayford without just cause.

89. Alternatively, Defendant's cited reason for terminating Rayford's employment was pretext.

90. At all times material herein, similarly-situated younger employees were not terminated without just cause.

91. Defendant terminated Rayford based on her age.

92. Defendant violated R.C. § 4112.01 et seq. when it terminated Rayford based on her age.

93. Rayford suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

94. As a direct and proximate result of Defendant's conduct, Rayford has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: DISABILITY DISCRIMINATION UNDER THE ADA

95. Rayford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Rayford is disabled, as described *supra*.

97. In the alternative, Defendant perceived Rayford as being disabled.

98. Rayford's condition constituted a physical impairment.

99. Rayford's condition substantially impaired one or more of his/her major life activities including working.

100. Defendant perceived Rayford's condition to substantially impair one or more of her major life activities including working.

101. Defendant treated Rayford differently than other similarly-situated employees based on her disabling condition.

102. Defendant treated Rayford differently than other similarly-situated employees based on her perceived disabling condition.

103. Defendant terminated Rayford's employment without just cause.

104. Defendant terminated Rayford's employment based her disability.

105. Defendant terminated Rayford's employment based her perceived disability.

106. Defendant violated the ADA when it discharged Rayford based on her disability.

107. Defendant violated the ADA when it discharged Rayford based on her perceived disability.

108. Defendant violated the ADA by discriminating against Rayford based on her disabling condition.

109. Defendant violated the ADA by discriminating against Rayford based on her perceived disabling condition.

110. Rayford suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

111. As a direct and proximate result of Defendant's conduct, Rayford suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT VI: DISABILITY DISCRIMINATION UNDER R.C. § 4112 et seq.**

112. Rayford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

113. Rayford is disabled, as described *supra*.

114. In the alternative, Defendant perceived Rayford as being disabled.

115. Rayford's condition constituted a physical impairment.

116. Rayford's condition substantially impaired one or more of his/her major life activities including working.

117. Defendant perceived Rayford's condition to substantially impair one or more of her major life activities including working.

118. Defendant treated Rayford differently than other similarly-situated employees based on her disabling condition.

119. Defendant treated Rayford differently than other similarly-situated employees based on her perceived disabling condition.

120. Defendant terminated Rayford's employment without just cause.

121. Defendant terminated Rayford's employment based her disability.

122. Defendant terminated Rayford's employment based her perceived disability.

123. Defendant violated R.C. § 4112 when it discharged Rayford based on her disability.

124. Defendant violated R.C. § 4112 when it discharged Rayford based on her perceived disability.

125. Defendant violated R.C. § 4112 by discriminating against Rayford based on her disabling condition.

126. Defendant violated R.C. § 4112 by discriminating against Rayford based on her perceived disabling condition.

127. Rayford suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

128. As a direct and proximate result of Defendant's conduct, Rayford suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATORY DISCRIMINATION

129. Rayford restates each and every prior paragraph of this complaint, as if it were fully restated herein.

130. As a result of the Defendant's discriminatory conduct described above, Rayford complained about the disability discrimination she was experiencing.

131. Subsequent to Rayford reporting of disability discrimination to her supervisor and employer, Rayford's employment was terminated.

132. Defendant's actions were retaliatory in nature based on Rayford 's opposition to the unlawful discriminatory conduct.

133. Pursuant to R.C. §4112.02(I) and the ADEA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

134. Rayford suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADEA and R.C. § 4112.01 *et seq*.

135. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Rayford, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Rayford demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Rayford's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Rayford for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Rayford's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Mabelyn Rayford*

## JURY DEMAND

Plaintiff Mabelyn Rayford demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)