IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MABELYN RAYFORD, | : | Case No. 1:22-cv-670 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| SISTERS OF CHARITY OF CINCINNATI, OHIO, | : | |
| Defendant. | : | |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (Doc. 26)

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 26). Plaintiff filed a Response in Opposition (Doc. 28), to which Defendant filed a Reply in Support (Doc. 30). Thus, this matter is ripe for the Court's review. For the reasons below, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

## FACTS

### I. Parties and Background

Plaintiff worked as a Licensed Practical Nurse ("LPN") for Defendant Sisters of Charity of Cincinnati, Ohio from November 7, 2017, until she was fired on January 13, 2022. (Defendant's Resp. to Interrog., Doc. 18-12, Pg. ID 231; Rayford Dep., Doc. 24, Pg. ID 502-503, 515-17.) At the time of her termination, Plaintiff was about 61 years old. (Compl., Doc. 2, ¶ 18.) While employed by Defendant, Plaintiff suffered from arthritis and anemia and walked with a limp. (*See* Rayford Dep., Doc. 24, Pg. ID 542-43.)

While employed for Defendant, Plaintiff worked in Mother Margaret Hall ("MMH") — a long-term, assisted-living facility that Defendant operates for retired Sisters in the Apostolic Sisters of Charity Order. (*See* Lane-David Dep., Doc. 18, Pg. ID 106-07; *see also* Orientation Manual, Doc. 24-4.) MMH has six floors dedicated to nursing care. (Anderson Dep., Doc. 22, Pg. ID 381.) Angela Anderson serves as Director of Nursing and oversees the nurses at MMH. (*Id.* at Pg. ID 378-79.)

Registered nurses, LPNs, and state-tested nurse aides ("STNAs") care for the residents at MMH. (*See* Lane-David Dep., Doc. 18, Pg. ID 114-15; Rayford Dep., Doc. 24, Pg. ID 545.) Each floor in MMH usually has one or two LPNs and at least one or two STNAs per shift. (Cook Dep., Doc. 20, Pg. ID 269.) LPNs are the "charge nurses" for their assigned floors, meaning they are responsible for all of the care provided on that floor and for ensuring the STNAs completed their duties. (Lane-David Dep., Doc. 18, Pg. ID 115; Anderson Dep., Doc. 22, Pg. ID 391.) STNAs assist the residents with bathing, eating, using the bathroom, and going to activities. (Lane-David Dep., Doc. 18, 115-16.)

## II. Defendant's Disciplinary Policy

Defendant uses a "progressive" disciplinary system that escalates from counseling to caution, reprimand, and ultimately termination. (Lane-David Dep., Doc. 18, Pg. ID 110.) Defendant can also suspend employees, but it usually only does so when investigating suspected theft or missing medication. (*Id.* at Pg. ID 110-11.) The steps in this policy can be bypassed. (*Id.* at Pg. ID 112.)

### III. Plaintiff's Disciplinary History

#### a. Transfer from Seventh Floor

Defendant originally assigned Plaintiff to MMH's seventh floor. (Rayford Dep., Doc. 24, Pg. ID 530-31.) While there, Plaintiff was reportedly disrespectful towards at least one STNA who was employed through a temporary staffing agency. (Anderson Dep., Doc. 22, Pg. ID 396-97.) The staffing agency notified Defendant that it would stop sending staff if they had to continue working with Plaintiff. (*Id.* at Pg. ID 397.) Anderson met with Plaintiff about this issue. (*Id.*) During this meeting, Plaintiff told Anderson that she preferred to work with MMH nursing staff because she "felt like she didn't know the [temporary STNAs] well enough and she didn't get along with them." (*Id.*) Plaintiff maintains that, during this meeting, Anderson said that Plaintiff "couldn't control [her] floor" and that she had "no control over [the] other nurses." (Rayford Dep., Doc. 24, Pg. ID 531.) After this meeting, Defendant started scheduling Plaintiff for shifts on the fourth floor instead of the seventh. (Anderson Dep., Doc. 22, Pg. ID 398.)

#### b. Plaintiff Receives a Caution

MMH houses cognitively impaired residents who may not move around the facility without supervision. (Anderson Dep., Doc. 22, Pg. ID 382-83.) When a cognitively impaired resident wanders unsupervised, Defendant refers to this as an "elopement." (*See id.*) A staff member who discovers an elopement must either alert the staff and call a supervisor, take the resident back to her unit, or stay with the resident until staff from that resident's floor arrives. (*Id.* at Pg. ID 383.)

On June 11, 2019, Plaintiff encountered one such resident who wandered from the

3

seventh floor to her floor. (Caution Consultation, Doc. 22-1, Pg. ID 467.) This resident was a flight risk who had been known to "dart off." (Anderson Dep., Doc. 22, Pg. ID 411-13.) When Plaintiff came upon this resident, she maintains that she gave the resident coffee and directed her to the floor's chapel. (Rayford Dep., Doc. 24, Pg. ID 552.) Plaintiff then called the nurses on the seventh floor, told them the resident was on the fourth floor, and hung up. (Caution Consultation, Doc. 22-1, Pg. ID 467.) By the time the shift supervisor came to the fourth floor, Plaintiff did not know where the resident was, and she did not respond to the supervisor's questions. (*Id.*) Anderson issued Plaintiff a caution on June 12, 2019, for this incident. (Caution Consultation, Doc. 22-1, Pg. ID 467-69.)

Plaintiff disputes this recounting, maintaining that the supervisor didn't question her about the resident, she was busy with other patients who were fall risks, and the wandering resident was trying to go to the chapel, not leave the premises. (Rayford Dep, Doc. 24, Pg. ID 551-52.) Plaintiff also maintains that she knew that another nurse let two residents off her floor without being disciplined. (*Id.* at Pg. ID 551-52.) Plaintiff concedes that she shared responsibility for the incident with the other staff on duty. (Plaintiff's Resp. to Interrog., Doc. 25-1, Pg. ID 752.)

### c. Plaintiff Receives a Reprimand

Nursing staff at MMH are required to check in on residents every two hours to see if they need to be changed. (Cook Dep., Doc. 20, Pg. ID 291.) On May 24, 2021, a resident on the fourth floor was up "all night" in her chair without being taken to the bathroom or changed. (*See* Reprimand Consultation, Doc. 22-2, Pg. ID 470.) Staff from the next shift found that the resident "and her chair pad [were] saturated with urine at change of shift."

4

(*Id.*) This exposed the resident to potential skin breakdown, urinary tract infection, and limited mobility. (*Id.*) Plaintiff was the charging nurse when this incident occurred, so she received a reprimand on May 26, 2021, for this oversight. (*Id.*)

Plaintiff disputes this series of events, asserting that the staff did check on the resident during her shift, and that the resident was dry the last time they checked on her. (Rayford Dep., Doc. 24, Pg. ID 554-57.) Plaintiff maintains that the day shift was inconsistent in caring for the resident. (*Id.* at Pg. ID 554-55.) Plaintiff also argues that it would have been pointless to contest the reprimand. (*Id.* at Pg. ID 556-57.) That said, Plaintiff concedes that she shared responsibility for the incident with the other staff on duty. (Plaintiff's Resp. to Interrog., Doc. 25-1, Pg. ID 752.)

### d. HIPAA Violation

Plaintiff also violated Defendant's Health Insurance Portability and Accountability Act ("HIPAA") policy by using her personal email to send patient information to Nurse Manager Laura Cook. (*See* August 17, 2021, Anderson Email, Doc. 22-4, Pg. ID 478; Rayford Email, Doc. 22-8, Pg. ID 485.) Plaintiff maintains that her work email was hacked at that time, so she had no other way to communicate with Cook. (Rayford Dep., Doc. 24, 570-71.)

### e. Performance Review

On August 18, 2021, Cook gave Plaintiff her performance review. (*See* Performance Review, Doc. 22-5, Pg. ID 479-81.) Cook specified that Plaintiff needed to improve in "utiliz[ing] the nursing process as a framework for nursing," "demonstrat[ing] appropriate documentation skills," and "accept[ing] supervisory guidance." (*Id.* at Pg. ID

5

479-80.) Cook noted that Plaintiff had issues with implementing care plans, completing assessments, documenting condition changes, protecting patient information, spreading false information about coworkers, and being receptive to supervisor feedback. (*Id.* at Pg. ID 481; Cook Dep., Doc. 20, Pg. ID 307-09.) Plaintiff did not agree with the evaluation. (Performance Review, Doc. 22-5, Pg. ID 480; Rayford Dep., Doc. 24, Pg. ID 562.)

### f. Failure to Provide Proper Care

At some point, Plaintiff and an STNA failed to change a resident into her "TED hose," or compression stockings. (*See* Lane-David Dep., Doc. 18, Pg. ID 163-64; Anderson Dep., Doc. 22, Pg. ID 399-401.) Plaintiff maintained that she was delayed in helping put on the TED hose because she was passing out medication. (Rayford Dep., Doc. 24, Pg. ID 571-72.) Still, on November 23, 2021, Anderson, Cook, and Human Resources Director Fallon Lane-David spoke with Plaintiff about the incident. (Lane-David Dep., Doc. 18, Pg. ID 163-64; Anderson Dep., Doc. 22, Pg. ID 399-401.) They also discussed Plaintiff's past performance and conduct issues referenced in her Performance Review, and they told her that she faced termination if there were "any other issues." if this issue happened again. (Lane-David Dep., Doc. 18, Pg. ID 163-64.)

Later, two STNAs and a resident complained that Plaintiff did not help apply the same resident's TED hose on December 25 and 26, 2021. (Discharge Consultation, Doc. 22-6, Pg. ID 482-83.) The resident waited for over an hour after calling for assistance for the stockings. (*Id.* at Pg. ID 482.) Plaintiff, despite being notified, did not assist the resident. (*Id.*) The STNA on Plaintiff's floor stated that she struggled to get help from Plaintiff and that Plaintiff did not respond to calls for assistance. (*Id.*; *see also* Cook Dep.,

6

Doc. 20, Pg. ID 313-14.)

Plaintiff disputes these events, testifying that she "always helped put on TED hose" and that the incident did not occur over two nights. (Rayford Dep., Doc. 24, Pg. ID 575-76.) Plaintiff added that nurses could request assistance from other floors, but she was instructed not to seek help on these occasions. (*Id.*) Plaintiff also testified that the resident did not request assistance and that she had put on that resident's TED hose "plenty of times." (*Id.* at Pg. ID 578.) Anderson testified that she would have allowed Plaintiff to ask other nurses for help with the TED hose if she had a problem, but she never vocalized a problem. (Anderson Dep., Doc. 22, Pg. ID 426.)

### IV. Plaintiff's Termination

Defendant terminated Plaintiff on January 13, 2022, after she had accumulated several performance issues. (Discharge Consultation, Doc. 22-6, Pg. ID 482-83.) The discharge notice pointed to the incidents related to the TED hose as a reason for termination. (*Id.*) It also referenced Plaintiff's "ongoing performance and conduct issues," as well as Plaintiff's "attitude and lack of being a team player" which had "created a toxic work environment, in which co-workers have requested to not be a part of." (*Id.*)

### V. Plaintiff's Opinions on Management

Plaintiff asserts that Defendant's management harassed her every day to push her out of her job. (*See* Rayford Dep., Doc. 24, Pg. ID 567-68.) As noted above, Plaintiff stressed that management disciplined her for conduct that other nurses did without any adverse consequences. Plaintiff stated that she reported this disparate treatment to Human Resources and her supervisors, but they did nothing. (*Id.* at Pg. ID 547-48, 586-87.)

7

## PROCEDURAL POSTURE

Plaintiff brings claims against Defendant for age and disability discrimination, as well as retaliation, in violation of Ohio and federal law. (*See* Compl., Doc. 2, ¶¶ 73-135.) Defendant now moves for summary judgment on all of Plaintiff's claims. (Motion for Summary Judgment, Doc. 26.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court will grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A court need not search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). And, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

### I. Disability Discrimination Claims

The Court will first consider Plaintiff's state and federal disability discrimination claims. (*See* Compl., Doc. 2, ¶¶ 95-128.) Plaintiff explicitly abandoned these claims in her response in opposition to summary judgment. (Plaintiff's Response, Doc. 28, Pg. ID 814.) Thus, Defendant is entitled to summary judgment in its favor on Plaintiff's state and federal disability discrimination claims. *See Mason v. Wal-Mart Corp.*, 2:14-CV-00446, 2016 WL 2624960, at *5 (S.D. Ohio May 9, 2015).

### II. Age Discrimination and Retaliation Claims

The Court next considers Plaintiff's claims for age discrimination and retaliation brought under federal and Ohio law. Both the federal Age Discrimination in Employment Act ("ADEA") and Ohio law prohibit an employer from discriminating against an employee because of such individual's age or for engaging in protected conduct. 29 U.S.C. § 623(a)(1) and (d); Ohio. Rev. Code § 4112.02(A) and (I). Furthermore, federal and state law prohibit employers from retaliating against employees who report unlawful discrimination. 29 U.S.C. § 623(d) (age); 42 U.S.C. § 12203(a) (disability); Ohio Rev. Code § 4112.02(I). These claims are all analyzed under the same framework, so the Court will review them in tandem. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012); *Williams v. Graphic Packaging Int'l*, 790 F. App'x 745, 750-51 (6th Cir. 2019).

Where, as here, a plaintiff seeks to establish discrimination through indirect evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). The first step of this framework

requires a plaintiff to establish a prima facie case for discrimination. *Id.* To establish a prima facie case of age discrimination, a plaintiff must show that she was: (1) a member of a protected class, (2) qualified for the position, (3) the victim of an adverse employment action, and (4) replaced by someone outside the protected class. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). And, a prima facie case of retaliation requires a showing that (1) the plaintiff engaged in protected activity; (2) the defendant knew of this protected activity; (3) the defendant then took an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 F. App'x 250, 256 (6th Cir. 2008) (citation omitted).

Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Ang*, 932 F.2d at 548. If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was but a pretext for unlawful discrimination. *Id.; see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Court proceeds on the assumption that Plaintiff has shown her prima facie case. Defendant too satisfies its burden of showing that it terminated Plaintiff for a legitimate, nondiscriminatory reason: Plaintiff's repeated performance issues. (*See* Motion for Summary Judgment, Doc. 26, Pg. ID 784-85.) Poor performance is a legitimate and nondiscriminatory reason for terminating an employee. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 252 (6th Cir. 2023) (noting that a failure to follow company

10

policies constituted a legitimate basis for termination); *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 548-50 (6th Cir. 2011) (holding that patient complaints and failure to follow patient care standards were legitimate bases for termination). The burden thus shifts back to Plaintiff to show that this reason is pretextual.

The fundamental question in the pretext analysis is whether the employer made the adverse employment decision for the stated reason or not. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). A plaintiff must produce sufficient evidence such that a reasonable jury could doubt the employer's stated reason for its actions. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). A plaintiff may refute an employer's proffered legitimate reason by showing that the reason (1) has no basis, (2) did not actually motivate the challenged conduct, or (3) could not warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

### a. Pretext Related to Age Discrimination

The Court will first consider Plaintiff's arguments for pretext as they relate to her age discrimination claim. (*See* Response, Doc. 28, Pg. ID 810-11.) Plaintiff argues that Defendant's reason for termination was pretextual because management disciplined her for certain conduct, but it would not discipline other employees who engaged in the same conduct. (*Id.* at Pg. ID 810.)

To succeed on this argument, Plaintiff must provide evidence that "other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020). Courts look to whether employees outside

11

the protected class "(1) dealt with the same supervisor, (2) [were] subject to the same standards, and whether they (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Pelcha v. MW Bancopr., Inc.*, 988 F.3d 318, 328 (6th Cir. 2021) (quotation omitted).

Plaintiff first points out that she was disciplined after the elopement incident, but the STNAs on the seventh floor—who allowed the resident to leave the floor—were not. (Response, Doc. 28, Pg. ID 810, 823; Rayford Dep., Doc. 24, Pg. ID 550-51.) But, the STNAs on the seventh floor were not similarly situated to Plaintiff—a charge nurse—because they had different responsibilities and expectations. (*See* Lane-David Dep., Doc. 18, Pg. ID 115-16.) More importantly, Plaintiff was disciplined for not following elopement protocol, rather than allowing a resident to leave her floor. (*See* Caution Consultation, Doc. 22-1, Pg. ID 467-68.) Thus, Plaintiff has not presented evidence showing that other employees engaged in conduct "substantially identical" to not following elopement protocol, let alone that those employees were subject to the same kind of responsibilities as Plaintiff. *See Miles*, 946 F.3d at 894. So, this evidence fails to show pretext.

Next, Plaintiff directs the Court to the incident relating to the resident who had soiled herself. (Response, Doc. 29, Pg. ID 810, 823.) Plaintiff argues that there was "no evidence" that the incident occurred while Plaintiff was on duty. (*Id.* at Pg. ID 823.) But, the incident report provides that staff last took the resident to the bathroom the day before Plaintiff's shift and that the resident was soiled by Plaintiff's shift change. (Reprimand Consultation, Doc. 22-2, Pg. ID 470-76.) Plaintiff does not provide evidence

12

to undermine this report or show that Defendant treated an employee differently in similar circumstances. Thus, this argument fails to show pretext. *Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (A plaintiff cannot meet her burden for pretext by mere "speculation in the face of documentary proof and deposition testimony.")

Plaintiff further argues that she was uniquely disciplined because she requested help putting on a resident's TED hose. (*See* Response, Doc. 28, Pg. ID 810, 823.) But, Plaintiff was not disciplined for requesting help in changing a TED hose. (*See* Discharge Consultation, Doc. 22-6, Pg. ID 482-83.) Rather, Plaintiff was disciplined because she ignored a resident's request for help and did not help STNAs put on that resident's TED hose. (*See id.*) As with the other incidents, there is no evidence that a similarly situated charge nurse acted the same way but escaped without the same consequences. In turn, this argument fails to show pretext.

Thus, Plaintiff has not met her burden to demonstrate pretext for her state and federal age discrimination claims.

### b. Pretext Related to Retaliation

Next, Plaintiff presents no argument to demonstrate pretext related to her state and federal retaliation claims. (*See* Response, Doc. 28, Pg. ID 811-14.) Rather, Plaintiff solely argues that she has created a prima facie case of retaliation. (*See id.*) This is not enough to demonstrate pretext. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989) ("Since [the plaintiff] has failed to set forth any evidence to rebut [the defendant's] legitimate and nondiscriminatory reason for his demotion," summary judgment on Plaintiff's retaliation claim was proper.)

In any event, Plaintiff does not tie her complaints to her age or physical conditions. Plaintiff testified that she did not report her age or physical conditions as bases for disparate treatment, and no one told her they impacted her ability to work. (*See* Rayford Dep., Doc. 24, Pg. ID at 544-45.) This, without connection to her age or physical conditions, is not enough to support Plaintiff's retaliation claim. *See Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 45 (6th Cir. 2009) (holding that complaints about general work-related issues without reference to membership in a protected class cannot sustain an unlawful retaliation claim).

*   *   *

Plaintiff fails to show that Defendant's proffered reason for terminating her was pretextual. Accordingly, summary judgment must be entered in favor of Defendant on Plaintiff's state and federal age discrimination and retaliation claims.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND